**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

VIVIAN WRIGHT,

                Plaintiff,

vs.                               Case No. 3:13-cv-504-J-JRK

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.
_____/

**OPINION AND ORDER**[1]

**I. Status**

Vivian Wright ("Plaintiff"), appearing in this matter pro se, is appealing the Commissioner of the Social Security Administration's final decision denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is a result of schizophrenia. See Transcript of Administrative Proceedings (Doc. No. 13; "Tr." or "administrative transcript"), filed July 23, 2013, at 39, 83, 84. On March 27, 2009, Plaintiff filed applications for DIB and SSI, alleging a disability onset date of March 13, 2009. Tr. at 223-26 (DIB), 227-29 (SSI). Plaintiff's applications were denied initially, see Tr. at 105-09 (DIB and SSI),[2] and were denied upon reconsideration, see Tr. at 112-13 (DIB), 114-15 (SSI).

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 15), filed August 19, 2013; Reference Order (Doc. No. 16), entered August 21, 2013.

[2] It appears from the Notice of Disapproved Claim dated August 4, 2009 that the Social Security Administration denied Plaintiff's claims for DIB and SSI collectively in this one notice. See Tr. at 105-06.

After Plaintiff waived her right to personally appear and testify at a hearing before an Administrative Law Judge ("ALJ"), see Tr. at 163, an ALJ issued an unfavorable decision on August 27, 2010, Tr. at 88-97.  On March 23, 2012, the Appeals Council entered an Order remanding the matter to the ALJ to obtain evidence from a vocational expert ("VE"). See Tr. at 103-04.

On October 29, 2012, a second ALJ held a hearing in accordance with the Appeals Council's Order, during which Plaintiff, who was represented by counsel, and a VE testified. Tr. at 31-73.  At the time of the hearing, Plaintiff was forty-five (45) years old.  Tr. at 81 (reflecting Plaintiff's date of birth); see also Plaintiff's Memorandum in Support for Complaint (Doc. No. 18; "Pl.'s Mem."), filed September 11, 2013, at 1 (same).  On January 31, 2013, the ALJ issued a written Decision finding Plaintiff not disabled through the date of the Decision.  Tr. at 14-24.  Through counsel, Plaintiff submitted a memorandum to the Appeals Council alleging that the ALJ erred, and Plaintiff requested that the Appeals Council remand the case to the ALJ.  See Tr. at 8-10.  On March 26, 2013, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the second ALJ's Decision dated January 31, 2013 the final decision of the Commissioner.  Plaintiff commenced this action pro se on May 7, 2013 pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff generally challenges the ALJ's Decision in three (3) ways by arguing the "ALJ erred when he found no[] functional limitations, [the ALJ incorrectly stated] the Plaintiff's age at the time of the hearing, and [the ALJ] failed to adequately consider the

opinions of third party witnesses and long term medical sources." See Pl.'s Mem. at 1. Plaintiff then lists ten (10) specific ways in which she believes the ALJ erred. See id. at 1-2. On November 22, 2013, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 19; "Def.'s Mem.") responding to Plaintiff's arguments. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for the reasons explained herein.

## II. The ALJ's Decision

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

---

[3] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 17-24. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since March 13, 2009, the alleged onset date." Tr. at 17 (emphasis and citation omitted). At step two, the ALJ found Plaintiff suffers from "the following severe impairment: Schizophrenia[.]" Tr. at 17 (emphasis and citation omitted). At step three, the ALJ ascertained Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 17 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] is limited to performing simple, routine, repetitive tasks. [Plaintiff] would relate adequately to co-workers and supervisors but should have only occasional contact with the general public. Changes in the workplace should be infrequent and gradually introduced.

Tr. at 19 (emphasis omitted). At step four, the ALJ found Plaintiff "unable to perform any past relevant work." Tr. at 22 (emphasis and citation omitted). At step five, after considering Plaintiff's age (forty-one (41) years old on the alleged disability date), education ("at least a high school education"), work experience, and RFC, the ALJ found "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." Tr. at 23 (emphasis and citations omitted). Specifically, relying on the testimony of the VE, the ALJ identified jobs such as "Marker," "Order Caller," and "Silver Wrapper[.]" Tr. at 23. The ALJ concluded, therefore, that Plaintiff "has not been under a disability . . . from March 13, 2009, through the date of th[e D]ecision." Tr. at 24 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### IV.  Discussion

As noted above, Plaintiff generally challenges the ALJ's Decision in three (3) ways, and then she notes ten (10) specific errors that she believes the ALJ committed.  See Pl.'s

Mem. at 1-2.  The undersigned addresses Plaintiff's arguments relating to the opinion of Gus Fricke, ARNP ("Mr. Fricke"), Plaintiff's treating nurse practitioner, and to the third-party reports contained in the administrative transcript.  Upon consideration of those arguments and Defendant's responses thereto, the undersigned concludes the ALJ erred and this matter is due to be reversed and remanded for further consideration of Mr. Fricke's opinion and the third-party reports.  Given these conclusions, and given that reconsideration of Mr. Fricke's opinion and the third-party reports may impact the findings at which Plaintiff's remaining arguments on appeal are aimed, it is unnecessary to substantively address Plaintiff's remaining arguments.  See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (declining to address certain issues because they were likely to be reconsidered on remand); Demenech v. Sec'y of the Dep't of Health & Human Servs., 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding that certain arguments need not be addressed when the case would be remanded on other issues).  Rather, on remand, the Commissioner will be instructed to ensure Plaintiff's other issues are appropriately addressed.

Mr. Fricke began seeing Plaintiff on about a monthly basis starting in July 2011.  See Tr. at 475.  Mr. Fricke noted that on July 14, 2011, Plaintiff's "[m]ood overall was depressed." Tr. at 448.  During that appointment, Plaintiff complained of "ongoing auditory hallucinations, some of which [were] command hallucinations . . . ." Tr. at 448.  Mr. Fricke diagnosed Plaintiff with, inter alia, schizophrenia, undifferentiated type.  Tr. at 449.  He noted Plaintiff's complaints about the side effects of taking "Risperdal," so he planned to

discontinue that medication, start Plaintiff on "Abilify," and continue her on "trazodone." Tr. at 450.

During the next three (3) months, Mr. Fricke generally kept Plaintiff on the same medications. Tr. at 443-46. On December 15, 2011, however, Mr. Fricke changed Plaintiff's medications at her request. Tr. at 442. Her medications and/or dosages were changed again on February 21, 2012. Tr. at 439. During the February 21, 2012 appointment, Plaintiff apparently told Mr. Fricke that "[s]he feels that things are 'just not right.'" Tr. at 439 (Mr. Fricke quoting Plaintiff). Her mood was "depressed" and her affect was "constricted." Tr. at 439. Mr. Fricke opined that her "[s]uicidal risks are somewhat increased in that she is reporting increased depression and frustration with employment." Tr. at 439.

On March 20, 2012, Plaintiff reported to Mr. Fricke that she was "having some 'suicidal thoughts now and then'" and that "[s]he may be having hallucinations." Tr. at 437 (Mr. Fricke quoting Plaintiff). Additional changes occurred with Plaintiff's medications. Tr. at 437. The following month, on April 18, 2012, Plaintiff reported that she was "'a little depressed.'" Tr. at 436 (Mr. Fricke quoting Plaintiff). Mr. Fricke indicated that "[t]here [was] no evidence of any suicidal or homicidal ideation," but he still noted Plaintiff's "[s]uicidal risks." Tr. at 436. Plaintiff reported to Mr. Fricke that "the voices [were] gone" but "she [was] still having about the same level of depression." Tr. at 436. Changes were made to Plaintiff's medications. Tr. at 436. On May 18, 2012, Plaintiff reported that she "ha[d] not been doing very well." Tr. at 435. She was still denying having any hallucinations, but she

was "more depressed." Tr. at 435. Mr. Fricke again made changes to Plaintiff's medications. Tr. at 435.

On June 21, 2012, Mr. Fricke completed a Mental RFC Questionnaire. Tr. at 475-78. His diagnoses of Plaintiff included "schizophrenia undiff." and "depression NOS." Tr. at 475. He also noted that Plaintiff "has had difficulty tolerating medications to control symptoms, withdraws under stress." Tr. at 478. He opined that her impairments are "reasonably consistent with the symptoms and functional limitations" he described on that form. Tr. at 477.

The Regulations list acceptable medical "[s]ources who can provide evidence to establish an impairment." 20 C.F.R. §§ 404.1513(a), 416.913(a). The acceptable medical sources are: (1) "[l]icensed physicians (medical or osteopathic doctors)"; (2) "[l]icensed or certified psychologists"; (3) "[l]icensed optometrists"; (4) "[l]icensed podiatrists"; and (5) "[q]ualified speech-language pathologists." 20 C.F.R. §§ 404.1513(a), 416.913(a). "[E]vidence from other sources [may be used] to show the severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work." 20 C.F.R. §§ 404.1513(d), 416.913(d) (stating other sources may include "[m]edical sources" not otherwise listed, "[e]ducational personnel," "[p]ublic and private social welfare agency personnel," and "[o]ther non-medical sources"). Opinions from sources "who are not technically deemed 'acceptable medical sources' . . . are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06-03p, 2006 WL 2329939, at *3. Generally, an ALJ "should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the

evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning, when such opinions may have an effect on the outcome of the case." Id. at *6.

The ALJ recognized that Mr. Fricke is not an acceptable medical source as defined by the Regulations. Tr. at 22. The ALJ assigned Mr. Fricke's opinion "little weight," reasoning that "Mr. Fricke's opinion is inconsistent with his own treatment records, which obviously renders his opinion as less persuasive." Tr. at 22. Citing to Mr. Fricke's treatment notes, the ALJ continued, "[Plaintiff]'s symptoms are managed on medication, when taken as prescribed." Tr. at 22 (citing Tr. at 436, 439, 441-44, 471-72).[4]

Upon review, the undersigned finds that the ALJ erred in his assessment of Mr. Fricke's opinion. The ALJ cites to some of Mr. Fricke's treatment notes to support his finding that Plaintiff's "symptoms are managed on medication, when taken as prescribed." Tr. at 22. A review of the cited notes as well as a review of all of Mr. Fricke's other treatment notes do not support the ALJ's conclusion. In fact, Mr. Fricke's notes reflect almost constant medication changes due to various side effects or the medication's failure to help Plaintiff with the symptoms of her schizophrenia and depression. See Tr. at 435, 436, 437, 439, 442, 446, 450, 471, 472. The medication changes recorded in Mr. Fricke's treatment notes are consistent with Mr. Fricke's statement that Plaintiff "has had difficulty tolerating medications to control symptoms." Tr. at 478.

---

[4] The ALJ cited to exhibit/page numbers in his Decision. See Tr. at 22. The undersigned provides the page numbers of the administrative transcript to which the ALJ's citations referred.

Although Mr. Fricke is not considered an acceptable medical source, his opinion as Plaintiff's treating nurse practitioner is important, especially in light of the lack of any other treating source opinion and the frequency with which Mr. Fricke saw Plaintiff. While Mr. Fricke's opinion is not entitled to any special deference, the ALJ's reasoning for assigning little weight to Mr. Fricke's opinion is not supported by substantial evidence. This constitutes reversible error.

Moreover, the administrative transcript contains third-party reports from Plaintiff's sibling and father. See Tr. at 319-26, 377 (Plaintiff's sibling), 341 (Plaintiff's father). The ALJ cites to portions of these reports in his findings at step three relating to Plaintiff's limitations in social functioning and concentration, persistence or pace. Tr. at 18 (citing Tr. at 316-26, 341).[5] Later in the Decision, the ALJ finds, "After careful consideration of the evidence, . . . [Plaintiff]'s medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, [Plaintiff]'s statements (and third party statements) concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." Tr. at 20.

The ALJ's discussion of the third-party reports is flawed. The ALJ cited portions of the reports and then made general statements without citation to other evidence in the record in an apparent attempt to discount the reports. Tr. at 20. These generalized statements, however, do not allow the undersigned to follow the ALJ's reasoning. Compounding this error is the fact that the ALJ lumped together his credibility findings for

---

[5] The ALJ cited to exhibit/page numbers in his Decision. See Tr. at 18. The undersigned provides the page numbers of the administrative transcript to which the ALJ's citations referred.

-10-

Plaintiff and her family members. In doing so, the ALJ relied at least in part on his finding that Plaintiff's symptoms were controlled with medications, citing to Mr. Fricke's notes. See Tr. at 21 (citing Tr. at 436, 439, 441-44, 471-72).[6] As found above, Mr. Fricke's notes do not readily support the ALJ's conclusion. Accordingly, the ALJ's discrediting of the third-party reports frustrates judicial review, and to the extent the ALJ's reasoning can be determined, such reasoning is not supported by substantial evidence.

### V. Conclusion

After due consideration, it is

**ORDERED**:

1.   The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) and pursuant to § 1383(c)(3) **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

> (A)   Reevaluate the opinion of Gus Fricke, ARNP and the third-party reports contained in the administrative transcript, and explain the weight given to Mr. Fricke's opinion and the third-party reports or otherwise ensure that the discussion of the evidence allows a subsequent reviewer to follow the reasoning;
>
> (B)   Ensure that the other issues raised in this appeal are appropriately addressed, if necessary; and

---

[6] The ALJ cited to exhibit/page numbers in his Decision. See Tr. at 21. The undersigned provides the page numbers to which the ALJ's citations referred.

    (C) Take such other action as may be necessary to resolve this matter properly.

2. The Clerk of Court is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on September 17, 2014.

              /s/ James R. Klindt
              JAMES R. KLINDT
              United States Magistrate Judge

jlk
Copies to:
Pro se party
Counsel of Record